UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| R.C., | Case No. 5:19-cv-00174-SHK |
|---|---|
| Plaintiff, | |
| v. | OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff R.C.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying her applications for supplemental security income ("SSI"), disability insurance benefits ("DIB"), and disabled widow's benefits ("DWB") under Titles II and XVI of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff previously applied for DIB and SSI, alleging disability beginning on September 13, 2007, and her claims were denied on July 18, 2013. Transcript ("Tr.") 102-11.[2] Plaintiff filed the instant applications for DIB and DWB on November 5, 2015, and an application for SSI on February 27, 2015, alleging disability in all applications beginning on September 13, 2007. Tr. 264-69, 286-94. On November 17, 2017, Plaintiff appears to have amended her alleged disability onset date to July 19, 2013, the day after the prior disability decision found her to not be disabled. Tr. 21, 391. Following a denial of benefits in the instant case, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on February 27, 2018, ALJ Laura Fernandez determined that Plaintiff was not disabled. Tr. 21-39. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, the Appeals Council denied review on November 30, 2018. Tr. 1-8. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that

---

[2] A certified copy of the Administrative Record was filed on June 17, 2019. Electronic Case Filing Number ("ECF No.") 15. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

3

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 416.920. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[3]
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [SSI]. If the claimant's

---

[3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [SSI]. See id.

Id. at 1098-99.

**B.     Summary Of ALJ's Findings**

Before making any findings in the above discussed five-step sequential evaluation process, the ALJ first determined that Plaintiff had rebutted the presumption of continuing nondisability that flowed from Plaintiff being found not

5

disabled previously in 2013.[4] Tr. 22. The ALJ found that Plaintiff's "age category has changed, but her overall functional abilities have changed little since her last disability adjudication found her 'not disabled.'" Id.

The ALJ first determined that "[Plaintiff] meets the insured status requirements of the . . . Act through September 30, 2007." Tr. 24. The ALJ next noted that "[i]t was previously found that [Plaintiff] is the unmarried widow of the deceased insured worker and has attained the age of 50. [Plaintiff] met the non-disability requirements for disabled widow's benefits as set forth in section 202(e) of the . . . Act." Id. The ALJ added that "[t]he prescribed period ends on February 28, 2019." Id.

The ALJ then found, at step one, that "[Plaintiff] has not engaged in [SGA] since September 13, 2007, the alleged onset date (20 CFR 404.1571 et. seq. and 416.971 et seq.)." Id. At step two, the ALJ found that "[Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, status post lumbar fusion surgery, diabetes, obesity, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c))." Tr. 25. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Id.

/ / /

---

[4] A binding determination of nondisability at the ALJ or Appeals Council level "creates a presumption that the claimant continued to be able to work after that date." Lester v. Chater, 81 F.3d 821, 827-28 (9th Cir. 1996) (internal quotation marks omitted). Thus, "in order to overcome the presumption of continuing nondisability arising from the first [ALJ's] findings on nondisability, [a claimant] must prove changed circumstances indicating a greater disability." Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (internal quotation marks omitted). Changed circumstances can include "[a]n increase in the severity of the claimant's impairment[,]" the alleged existence of a new impairment not previously considered, or "a change in the claimant's age category, as defined in the Medical–Vocational Guidelines [the (Grids")]." Lester, 81 F.3d at 827.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: [Plaintiff] must be permitted to perform work activity in both standing or sitting position, but with no more than three position changes in an hour. [Plaintiff] can occasionally climb, balance, stoop, kneel, crouch, and crawl. She is limited to performing simple, routine tasks with only occasional contact with the general public.

Tr. 27. The ALJ then found, at step four, that "[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." Tr. 36.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on August 27, 1965 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. [Plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963)." Id. The ALJ observed that "[Plaintiff] has a marginal education and is able to communicate in English (20 CFR 404.1564 and 416.964)." Tr. 37. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills ([]SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a))." Id. Specifically, the ALJ found that Plaintiff could perform the occupations of "Assembler Small Products[,]" as the occupation is defined in the Dictionary of Occupational Titles ("DOT") at 706.684-022, 'which has 11,500 jobs in the national economy[,]" Assembler Electrical Accessories at DOT 729.687-010, with 10,500 jobs in the national economy, and Assembler

Plastic Hospital Products at DOT 712.687-010, with 5,000 jobs in the national economy. Tr. 38.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rules." Tr. 38 (internal quotation marks omitted). The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from September 13, 2007, through [February 27, 2018], the date of th[e] decision (20 CFR 404.1520(g) and 416.920(g))." Id.

### C. Issues Presented

In this appeal, Plaintiff raises four issues, whether: (1) "the ALJ properly considered the evidence and developed the record concerning a new medical impairment constituting a 'changed circumstance' rebutting the presumption of non-disability"; (2) "the ALJ provided specific and legitimate reasons for rejecting the opinions of the treating psychiatrist and consulting psychologist"; (3) "the ALJ's adverse credibility determination is supported by clear and convincing evidence"; and (4) "the ALJ carried her burden in establishing Plaintiff's literacy and properly applied the Medical-Vocational Guidelines." ECF No. 16, Joint Stip. at 3. The Court finds that the second issue Plaintiff raises is dispositive here, so it examines that issue first.

### D. Court's Consideration Of Whether ALJ Provided Specific And Legitimate Reasons For Rejecting The Opinions Of The Treating Psychiatrist And Consulting Psychologist.

Plaintiff argues that "the ALJ improperly weighed the opinions of the treating psychiatrist Dr. King. and consulting psychologist Dr. Williams." Id. at 16 (citing Tr. 33-35). The Court first considers the ALJ's rejection of Dr. King's opinion.

///

8

### 1. Parties' Arguments

Plaintiff argues that the ALJ erred in her rejection of the opinion of her treating psychiatrist, Aubrey King, M.D., in two ways. First, Plaintiff argues that the ALJ provided only a "conclusory statement that the evidence does not support [Dr. King's] opinion." Id. at 17. Second, Plaintiff argues that "[t]he ALJ erred by failing to accurately represent [her] testimony about her daily activities and the ALJ fail[ed] to obtain information relevant to the performance of those activities before relying on them as substantial evidence to reject Dr. King's opinion." Id. at 34.

Specifically, Plaintiff argues that the ALJ did "not fully summarize [her] testimony" and instead "inaccurately asserted that [she] reads" and is able to concentrate, despite evidence in the record demonstrating that she is "unable to concentrate due to [her] medications" and that her stress and her depression disrupt her ability to concentrate and read. Id. at 18-19 (citing Tr. 34, 55, 326-34). Plaintiff adds that she "did not cite reading as a hobby on her April 2015 function report and did not testify that she spent time reading." Id. at 33 (citing Tr. 45-75, 326-34). Plaintiff asserts that the ALJ also "failed to clarify whether [she] was able to concentrate on the church services she attended before relying on this as substantial evidence to reject [Dr. King's] opinion." Id. at 33-34. Finally, Plaintiff argues that the ALJ "failed to account for the limitations [she] testified to experiencing with watching television." Tr. 34. Thus, Plaintiff argues, "Defendant's citation to other daily activities . . . as evidence for why Dr. King's opinion should be rejected must be rejected as post hoc rationalization" because "[t]he ALJ limited her analysis to the three activities discussed [above]." Id. (emphasis removed).

Defendant responds that "the ALJ properly gave this opinion little weight" because "the evidence supported some but not all the functional limitations that Dr. King opined" and, thus, "h[er] opinion merited only partial weight in the ALJ's determination or [RFC]." Id. at 27. Specifically, Defendant argues that

9

"the totality of evidence did not support Dr. King's opinion that Plaintiff would have difficulty with simple instructions or maintaining a regular schedule." Id. at 26 (citations omitted). Defendant adds that "while the evidence showed that Plaintiff had some difficulty with maintaining attention and concentration, her ability to attend and concentrate was not poor." Id. (citations omitted). Defendant asserts, in pertinent part, that Plaintiff "liked reading and read daily[,]" and "Rosa Herrera, a friend of Plaintiff's indicated that she loves to read and does so every day." Id. at 26-27 (citations and internal quotation marks omitted). Finally, Defendant argues that Plaintiff "cites no authority for her apparent theory that the ALJ was required to quiz her about her reading, as described in a function report that she submitted, or determine whether she was able to concentrate well on church service." Id. at 27 (citations and internal quotation marks and alterations omitted).

### 2. Dr. King's Opinion

On May 9, 2015, Dr. King completed a medical source statement, wherein she noted that she treated Plaintiff once per month since February 5, 2014, and had diagnosed Plaintiff with, and treated Plaintiff for schizoaffective disorder and bipolar disorder. Tr. 428. Dr. King opined, in pertinent part, that with respect to Plaintiff's "sensorium and cognitive functioning[,]" Plaintiff presented to her "current mental status examination" with "slightly distracted" concentration, "moderate[ly]" impaired "remote" memory issues, and "average" intelligence. Id. (capitalization normalized). Dr. King reported that Plaintiff appeared "anxious[,]" that Plaintiff "report[ed] she feels like 'she is being watched[,]'" and that Plaintiff presented to the examination with "auditory [and] visual hallucinations." Tr. 428.

Specifically, Dr. King noted that Plaintiff "report[ed] she hears whispers calling her name [and] believes she receives messages from the [television], which are real." Tr. 429. Dr. King reported that Plaintiff has a history of "grandiose

10

delusions," such as instances where Plaintiff "wrote checks [and] would give [them] away when [she] didn't have money." Tr. 429. Dr. King added that Plaintiff had a history of "persecutory thoughts" and that she "engages in . . . frequent brushing [of] her teeth when she has a distorted view of herself" and Plaintiff "report[edly] brushes [her teeth] several times during the day" as a result. Id. Dr. King added that Plaintiff's "functioning is impaired when she is not on medication," and, specifically, with medication Plaintiff has no auditory or visual hallucinations. Tr. 429-30.

With respect to the extent that Plaintiff's metal disorders affect Plaintiff's ability to perform activities, Dr. King opined that Plaintiff had a "poor" ability to:

- Maintain concentration and persistence;
- Perform activities within a schedule and maintain regular attendance;
- Complete a normal workday and workweek without interruptions from psychologically based symptoms; and
- <u>Respond appropriately to changes in a work setting</u>.

Tr. 430 (emphasis added). Dr. King added that Plaintiff had a "fair" ability to:

- Understand, remember, and carry out complex instructions;
- Understand, remember, and carry out simple instructions; and
- Interact appropriately with the public.

Id. Finally, Dr. King opined that Plaintiff had a "good" ability to:

- Interact appropriately with supervisors; and
- Interact appropriately with co-workers.

Id.

### 3. ALJ's Consideration Of Dr. King's Opinion

The ALJ observed that Dr. King provided a medical source statement on May 9, 2015, wherein Dr. King "diagnosed [Plaintiff] with schizoaffective disorder and bipolar disorder." Tr. 33. The ALJ noted that Plaintiff's "mental status examination at that time showed her to be well-groomed with normal speech,

11

cooperative demeanor, and normal motor activity[,]" that Plaintiff "was slightly distracted and showed moderately reduced remote memory[,] [h]er intelligence was noted to be average[,]" and "[h]er mood was anxious and her affect appropriate. Id. (citing Tr. 428-29). The ALJ observed that "Dr. King noted that [Plaintiff's] functioning is impaired when she is not on medication" and that Plaintiff "has no difficulty interacting with supervisors and co-workers but would have only a fair ability to interact with the public." Id. The ALJ added that Plaintiff "would be poor at maintaining attention and concentration, maintaining a regular schedule, and completing a normal workday/workweek[,]" but that [h]er ability to carry out both simple and complex instructions would be fair. Id. (citing Tr. 430).

The ALJ accorded Dr. King's opinion "partial weight" and found that "[t]he evidence of record fully supports the finding that [Plaintiff] would have some limitations for interacting with the public, but little difficulty engaging with supervisors and co-workers." Id. The ALJ added that "[Plaintiff's] own allegations deny any difficulty getting along with others." Tr. 33-34.

The ALJ found that "Dr. King's opinion that [Plaintiff] would have some difficulty with the public is well-supported and consistent with the evidence of record" "[h]owever, the totality of evidence fails to support the finding that [Plaintiff] would have difficulty with simple instructions or maintaining a regular schedule." Tr. 34. The ALJ noted that Plaintiff "shows no difficulty adhering to her current regular routine," and "[w]hile the evidence shows [Plaintiff] ha[s] some difficulty with maintaining attention and concentration, [Plaintiff's] ability to attend and concentrate is not poor." Id.

In finding that Plaintiff's ability to attend and concentrate was not poor, the ALJ noted that Plaintiff "reads, watches television, and attends church twice per week, which all require more than poor concentration." Id. The ALJ added that "[t]he evidence also fails to support this functional limitation to the extent opined

by Dr. King. Thus, the medical opinion of Dr. King warrants partial weight in support of [Plaintiff's] [RFC], as it is partially supported and partially consistent with the evidence of record." Id.

### 4. Standard To Review ALJ's Analysis Of Dr. King's Opinion

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a

treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### 5. ALJ's Decision Is Not supported By Substantial Evidence

Here, as an initial matter, the Court finds that the ALJ did not specifically find that Dr. King's opinion was contradicted by the opinion of another doctor. As discussed above, the ALJ found that "the evidence of record fully supports" some of Dr. King's conclusions, while "the totality of evidence fails to support" Dr. King's other findings. Tr. 33-34. The ALJ, however, did consider and discuss other mental health opinions that were not entirely consistent with Dr. King's opinion, and, therefore, the Court finds that the specific and legitimate standard applies here. See Trevizo, 871 F.3d at 675. The ALJ's reasons for rejecting Dr. King's opinion, however, fail to meet even this lower burden for the following reasons.

First, the ALJ's conclusory statement that "the medical opinion of Dr. King" is not supported "the evidence of record[,]" without pointing to specific examples of such evidence and providing an explanation or interpretation of how it is inconsistent with Dr. King's opinion, does not amount to a specific and legitimate reason for discrediting Dr. King's opinion. See Garrison, 759 F.3d at 1012 ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct."); see also id. at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with

14

boilerplate language that fails to offer a substantive basis for his conclusion.") (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Second, the portion of Dr. King's opinion that the ALJ did provide reasoning for rejecting—wherein the ALJ found that Plaintiff's ability to attend and concentrate was not poor because Plaintiff "reads, watches television, and attends church twice per week, which all require more than poor concentration"—was not supported by substantial evidence because the ALJ selectively relied on some entries in the record while ignoring others. Tr. 34; see Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

For example, the ALJ considered only evidence that Plaintiff's medication effectively "manage[d] her symptoms of auditory and visual hallucinations" but ignored other evidence that Plaintiff was "unable to concentrate due to [her] medications." Tr. 31-32; Tr. 326; see also Tr. 342 (Plaintiff's friend Rosa Cendejas indicating in a function report that Plaintiff's medications caused adverse side effects). Moreover, the ALJ observed that Plaintiff was compliant with her medications throughout the relevant time period. See Tr. 31 (ALJ noting that Plaintiff "has long maintained regular and compliant treatment with mental health providers); Tr. 32 (ALJ observing that "[i]n November 2014 [Plaintiff] advised that she was taking her medications as prescribed"). Thus, on the record before the Court, Plaintiff's auditory and visual hallucinations appear to have been reduced or controlled by her medication, which Plaintiff was compliant in taking, but the evidence—which the ALJ failed to consider or discuss—also reveals that Plaintiff's medications hindered Plaintiff's ability to concentrate. Thus, the ALJ's conclusion that Plaintiff did not have poor concentration is undercut by the ALJ's failure to consider or discuss this evidence.

Finally, the ALJ failed to consider or discuss—and thus also failed to provide specific and legitimate reasons to reject—portions of Dr. King's opinion that

15

contradict the ALJ's step five finding.  Specifically, the ALJ failed to consider or discuss Dr. King's opinion that Plaintiff had a "poor" ability to "respond appropriately to changes in a work setting."  Tr. 430.  This oversight by the ALJ is material here because the overlooked portion of Dr. King's opinion directly contradicts the ALJ's step five finding that Plaintiff could perform the occupation of Assembler Small Products as it is described at DOT 706.684-022.  The DOT states that workers in an Assembler of Small Products occupation "[m]ay be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor."[5]

      Thus, on the record before the Court, Dr. King opined that Plaintiff would have a poor ability to respond appropriately to changes in a work setting and the ALJ, without considering or discussing this opinion, found that Plaintiff could perform an occupation where she may have to respond to changes in her work setting by changing work stations periodically as production or fatigue requires.

      The ALJ's failure to consider this part of Dr. King's opinion is especially harmful in this case, where the ALJ opined that the three occupations Plaintiff could perform had 11,500, 10,500, and 5,000 jobs available in the national economy, and one of those occupations—the Assembler Small Products occupation with 11,500 jobs in the national economy—appears contradictory to Dr. King's opinion.  Tr. 38.  When the 11,500 jobs from the Assembler Small Products occupation are deducted from the total jobs that are nationally available for Plaintiff to perform, the ALJ's step five finding supports a conclusion that there are only 15,500 jobs available nationally (10,500 + 5,000) that Plaintiff can perform, which falls below the threshold of what the Ninth Circuit has found constitutes work that exists in significant numbers nationally.  See Gutierrez, 740 F.3d at 528-29 (25,000

---

[5] See DOT occupational info at: https://occupationalinfo.org/70/706684022.html, last viewed March 24, 2020.

16

jobs nationally available presents a "close call" as to whether work exists in significant numbers nationally).

Accordingly, the Court finds that the ALJ's implicit rejection of Dr. King's opinion that Plaintiff has a poor ability to respond appropriately to changes in a work setting was not supported by substantial evidence in the record and resulted in the ALJ's step five finding not being supported by substantial evidence in the record.

Similarly, the ALJ failed to consider, and thus implicitly rejected, a Global Assessment of Functioning ("GAF") score[6] of 45 that Dr. King assessed on March 14, 2015. Tr. 442. This score "between 41 and 50 describes serious symptoms or any serious impairment in [Plaintiff's] social, occupational, or school functioning," and the ALJ could not reject it without comment. Garrison, 759 F.3d at 1002 n.4.

Moreover, the ALJ's implicit rejection of Dr. King's March 2015 GAF score assessment erodes the ALJ's reasoning for rejecting the other four GAF scores in Plaintiff's record, including the:

- February 5, 2014, GAF score of 55 assessed by Socorro Gomez, Licensed Marriage and Family Therapist ("LMFT");
- March 21, 2014, GAF score of 54 assessed by Maria Teresa Salanga, M.D.;
- January 24, 2015, GAF score of 55 assessed by Dr. King; and the
- June 27, 2015, GAF score of 45 assessed by Dr. King;

Tr. 35.

---

[6] "'A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.'" Garrison, 759 F.3d at 1002 n.4 (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir.1998)). Moreover, "a GAF score between 41 and 50 describes serious symptoms or any serious impairment in social, occupational, or school functioning[,]" while "[a] GAF score between 51 to 60 describes moderate symptoms or any moderate difficulty in social, occupational, or school functioning." Id. (internal quotation marks omitted). "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." Id.

The ALJ "accord[ed] these snapshot assessments little weight, noting that, generally, GAF scores represent a subjective interpretation of the claimant's general functioning at the particular time of the assessment." Id. The ALJ added that "GAF scores are vague, one-time assessments of the claimant's general symptomology and do not represent the claimant's overall functioning over any significant period of time." Id.

Here, when Dr. King's March 2015 GAF score of 45 is taken in conjunction with the other four GAF scores in Plaintiff's record, the five consistent scores from three independent doctors provided over a sixteen-month period appear more like substantial evidence of a moderate-to-severe mental impairment, rather than a collection of one-time, isolated assessments of Plaintiff's general symptomology over an insignificant period of time—as the ALJ found. Moreover, Dr. King's March 2015 GAF score of 45 that the ALJ ignored appears entirely consistent with the two GAF scores of 45 and 55 assessed by Dr. King in January and June 2015 that the ALJ considered but rejected.

Accordingly, for the reasons discussed above, the Court finds that the ALJ's rejection of Dr. King's opinion was not supported by specific and legitimate reasons, or substantial evidence in the record. As such, the Court finds that remand for further proceedings is appropriate here. On remand, in addition to reassessing the weight due to Dr. King's opinion, the Commissioner shall also explain whether the five GAF scores in the record—when Dr. King's ignored March 2015 GAF score is considered—from the three independent doctors, which span a sixteen month period, are still due little weight as mere one-time assessments over an insignificant period of time.

Because the Court finds that remand for further proceedings is appropriate as to the above discussed issue, it does not reach Plaintiff's remaining assignments of error.

/ / /

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED: 03/31/2020

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge